# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD OF PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,[1]<br><br>                        Debtors. | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD OF PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>    and<br><br>THE OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS OF ALL TITLE III DEBTORS (OTHER<br>THAN COFINA),<br><br>    Plaintiffs,<br><br>v.<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>    Defendant. | Adv. Proc. No.  18-00149-LTS<br><br><br><br>**MOTION OF THE QTCB<br>NOTEHOLDER GROUP TO<br>INTERVENE AND/OR FOR<br>JOINDER UNDER FEDERAL<br>RULES OF BANKRUPTCY<br>PROCEDURE 7024 & 7019** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of  Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case  No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of  the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last  Four Digits of Federal Tax ID: 3747).  (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Pages

PRELIMINARY STATEMENT ....................................................................................2

JURISDICTION AND VENUE ...................................................................................6

BACKGROUND ..........................................................................................................6

    I. The Adversary Proceeding ...................................................................................6

    II. The Public Buildings Authority ..........................................................................7

    III. The QTCB Bonds and QTCB Noteholder Group.............................................10

RELIEF REQUESTED..................................................................................................11

ARGUMENT ................................................................................................................11

    I. The QTCB Noteholder Group Is Entitled To Intervene As A Matter Of Right..................11

        A.    The QTCB Noteholder Group Has An Unconditional Right to Intervene Under Fed. R. Civ. P. 24(a)(1) And First Circuit Precedent...........................11

        B.    In The Alternative, The QTCB Noteholder Group May Intervene As A Matter Of Right Under Fed. R. Civ. P. 24(a)(2).........................................................14

    II. Alternatively, The Court Should Grant The QTCB Noteholder Group The Right To Intervene Under Fed. R. Civ. P. 24(b) ........................................................17

    III. The QTCB Noteholder Group is a Necessary Party Under Fed. R. Civ. P. 19 ................18

CONCLUSION.............................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
  440 F.3d 541 (1st Cir. 2006) ...................................................................................15

*Banco Popular de P.R. v. Greenblatt*,
  964 F.2d 1227 (1st Cir. 1992) ................................................................................13

*Culbreath v. Dukakis*,
  630 F.2d 15 (1st Cir. 1980) ....................................................................................13

*Daggett v. Comm'n on Gov't Ethics & Election Practices*,
  172 F.3d 104 (1st Cir. 1999) ..................................................................................17

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
  276 F.3d 1150 (9th Cir. 2002) ...............................................................................19

*Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*,
  257 F.R.D. 96 (W.D.N.C. 2009) ............................................................................18

*In re El Comandante Mgmt. Co., LLC*,
  359 B.R. 410 (Bankr. D.P.R. 2006) ........................................................................13

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  872 F.3d 57 (1st Cir. 2017) ....................................................................................12

*Lennox Industries, Inc. v. Caicedo Yusti*,
  172 F.R.D. 617 (D. P.R. 1997) ...............................................................................19

*Mahurin's Constr. Co. v. Granite RE, Inc.*,
  2004 WL 2249489 (D. Kan. 2004) .........................................................................18

*Nextel Commc'ns of the Mid-Atl., Inc., d/b/a Nextel Commc'ns v. Hanson*,
  311 F. Supp. 2d 142 (D. Mass. 2004) ...............................................................15, 16

*P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*,
  637 F.3d 10 (1st Cir. 2011) .................................................................................13, 15

*Pujol v. Shearson Am. Exp., Inc.*,
  877 F.2d 132 (1st Cir. 1989) ..................................................................................19

*In re Rovira Ortiz*,
  No. 03-04534 SEK, 2006 WL 3898381 (Bankr. D.P.R. June 2, 2006) ...................12

*Sea Hunters, L.P. v. S.S. Port Nicholson*,
　　No. 2:08-CV- 272-GZS, 2013 WL 5435636 (D. Me. Sept. 29, 2013) ....................................17

*Ticket Ctr., Inc. v. Banco Popular de Puerto Rico*,
　　No. CIV04-2062GAG/BJM, 2008 WL 859275 (D.P.R. Mar. 28, 2008) ...........................18, 19

*United Nuclear Corp. v. Cannon*,
　　696 F.2d 141 (1st Cir. 1982) ...................................................................................................16

**Statutes**

22 L.P.R.A.

　　§ 902 ..........................................................................................................................................7
　　§ 903 ..........................................................................................................................................7
　　§ 904 ........................................................................................................................................16
　　§ 906 .....................................................................................................................................7, 8
　　§ 916 ..........................................................................................................................................9

11 U.S.C.

　　§ 365(d)(3) .......................................................................................................................2, 10, 18
　　§ 503(b) ...............................................................................................................................2, 10
　　§ 507(a)(2) ...............................................................................................................................10
　　§ 1109(b) ........................................................................................................................... passim

*Puerto Rico Oversight, Management, and Economic Stablity Act* ("PROMESA")

　　§ 104(j) ...................................................................................................................................6, 7
　　§ 206 ..........................................................................................................................................6
　　§ 301(a) .................................................................................................................................6, 10
　　§ 306(a) ......................................................................................................................................6
　　§ 307(a) ......................................................................................................................................6
　　§ 310 .................................................................................................................................1, 6, 11

**Other Authorities**

Fed. R. Bankr. P. 2019 ......................................................................................................................1

Fed. R. Bankr. P. 7019 ..................................................................................................................1, 5

Fed. R. Bankr. P. 7024 ..............................................................................................................1, 5, 6

Fed. R. Civ. P. 19 ......................................................................................................................5, 18, 19

Fed. R. Civ. P. 24 ..................................................................................................................... passim

The QTCB Noteholder Group[2] respectfully submits this motion to intervene as a defendant and/or for joinder in the above-captioned adversary proceeding (the "Adversary Proceeding") pursuant to Fed. R. Bankr. P. 7024 and 7019, made applicable by section 310 of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA").

On December 26, 2018, counsel to the QTCB Noteholder Group conferred with counsel to each of the Financial Oversight and Management Board (the "FOMB"), the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") (together with the FOMB, the "Plaintiffs"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), seeking their consent to the QTCB Noteholder Group's intervention in the Adversary Proceeding. In addition, promptly after being informed on January 5, 2019, that Norton Rose Fulbright would represent the defendant, Puerto Rico Public Buildings Authority ("PBA" or the "Defendant"), counsel to the QTCB Noteholder Group similarly requested PBA's consent to intervention. The parties agreed to discuss a potential stipulation to resolve the intervention requested herein; however, the parties have not been able to reach agreement in light of the terms Plaintiffs and Defendant jointly demanded as conditions to intervention. As of the filing date of this motion, the parties have not agreed upon the terms of such a stipulation but the QTCB Noteholder Group will continue good faith discussions to reach agreement, if possible. In support of this motion (the "Motion"), the QTCB Noteholder Group respectfully states as follows:

---

[2] The QTCB Noteholder Group has the same meaning as set forth in Notice of Appearance and Request for Notice (Case No. 17-BK-3283 (LTS), Dkt. No. 134) and Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019 (Case No. 17-BK-3283 (LTS), Dkt. No. 3765).

## PRELIMINARY STATEMENT

1.      The QTCB Noteholder Group, through its members, holds a substantial majority of approximately $877 million in Qualified School Construction Bonds (the "QSCB bonds") and Qualified Zone Academy Bonds (the "QZAB bonds" and, together with the QSCB bonds, the "QTCB bonds") issued by PBA and guaranteed by the Commonwealth of Puerto Rico (the "Commonwealth").  The QTCB Noteholders seek to intervene in this Adversary Proceeding, in order to protect their collateral, their lien rights and their express third-party beneficiary contract rights related to 1,900 leases between PBA and Commonwealth-related entities.  Plaintiffs here seek to recharacterize these leases as disguised financings, eliminating a significant portion of the QTCB Noteholder Group's collateral and disallowing substantial administrative priority claims of PBA and the QTCB Noteholder Group arising under section 365(d)(3) of the Bankruptcy Code relating to the PBA leases with the Debtors.[3]

2.      PBA was created by the Puerto Rico Legislature in 1958 as an instrumentality of the Commonwealth in order to lower the real estate costs associated with the Commonwealth's agencies and departments by capitalizing on the efficiencies that come through centralized ownership and management, while passing along only PBA's costs and eliminating the profit margins otherwise included in payments to a private real estate manager.

3.      Pursuant to its Legislative mandate, PBA owns, manages, and maintains an extensive real estate portfolio within Puerto Rico that is used for the public benefit of the Commonwealth.  PBA provides the infrastructure essential to protect the people of Puerto Rico, provide healthcare, manage the government, and educate the next generation of Puerto Rico's

---

[3] The Complaint seeks a declaratory judgment regarding administrative priority claims arising under section 365(d)(3) of the Bankruptcy Code.  The QTCB Noteholder Group reserves its rights to assert that PBA has administrative claims arising under section 503(b) of the Bankruptcy Code independent of section 365(d)(3).

citizens and leaders.  For example, PBA manages some 418 schools, 106 police/fire and other

emergency service stations, 55 governmental centers, and 36 judicial and court buildings, as well

as numerous hospitals, jails, parking lots, health facilities, offices, warehouses, workshops, and

other facilities related to government services.[4]  PBA operates through its approximately 1,000

employees (commanding annual payroll obligations ranging from roughly $79.1 million to $96.8

million).

4.      PBA generates income by leasing its extensive real estate holdings to various

departments, agencies, instrumentalities, and municipalities of the Commonwealth, in addition to

private parties.  Rental payments from the PBA leases constitute PBA's primary (if not only)

source of revenues.[5]  These rental revenues are used to pay PBA's operating expenses, including

general and administrative expenses, PBA employee benefits, capital expenditures and

maintenance costs associated with the properties it owns, and the debt service on the bonds that

PBA issues.  While Puerto Rico law requires PBA to charge rental amounts sufficient to cover

all these expenses, the law also restricts PBA from unduly profiting from the leases by

preventing PBA from charging amounts greater than necessary to sustain its operations and debt

service.

5.      Holders of PBA bonds, including the QTCB Noteholder Group, are express third

party beneficiaries of the PBA leases.  Additionally, the QTCB Noteholder Group, and other

PBA bondholders, have a lien on the rental payments.

---

[4] *See, e.g.,* http://www.aep.pr.gov/index.asp (last visited January 14, 2019).

[5] Approximately 75% of the interest due and payable on the QTCB bonds are repaid by a subsidy from the federal government through the Internal Revenue Service.  This subsidy significantly reduces the effective costs of school properties developed by PBA and, consequently, the rents charged for the use of such properties.

6.      PBA and the Commonwealth have defaulted on their payment obligations to PBA bondholders, including their payment obligations on the QTCB bonds held by the QTCB Noteholder Group.[6]

7.      In its Order Resolving the *Motion of the PBA Funds for the Payment of Rent*, Case No. 17-BK-3283 (LTS), Dkt. No. 2501, this Court granted PBA an allowed administrative priority claim for all post-petition unpaid rent accrued under the roughly 1,900 nonresidential real property leases entered into by PBA, unless each lease was adjudicated to be recharacterized as a non-lease financing transaction. *See* Case No. 17-BK-3283 (LTS), Dkt. No. 2716 ¶ 2.

8.      Plaintiffs have now filed this Adversary Proceeding seeking a declaration that each of the 1,900 PBA leases should be recharacterized as a financing transaction. The result of such a declaration would not only eliminate the Debtors' need to assume or reject any of the 1,900 PBA leases but also would vitiate PBA's administrative priority claims.

9.      As lenders whose collateral is threatened by recharacterization of the PBA leases, and as express third-party beneficiaries of the PBA leases and holders of liens against PBA's rents, the members of the QTCB Noteholder Group have significant legal and financial interests that will be directly impacted by the outcome of the Adversary Proceeding.

10.      Accordingly, the QTCB Noteholder Group seeks to intervene in this Adversary Proceeding for all purposes, including to file an answer in similar form and substance to the Proposed Answer to the Plaintiffs' Complaint for Declaratory Relief and Disallowance of

---

[6] PBA and the Commonwealth have defaulted on a portion of their QTCB interest payment obligations ten times, including the interest payments due on October 1, 2016, January 1, 2017, April 1, 2017, July 1, 2017, October 1, 2017, January 1, 2018, April 1, 2018, July 1, 2018, October 1, 2018, and January 1, 2019.

-4-

Administrative Claim (attached hereto as Exhibit A) (the "Proposed Answer")[7], in order to protect the rights and interests of the QTCB Noteholder Group as PBA bondholders.

11.    As more fully explained below, the QTCB Noteholder Group is permitted an "unconditional right to intervene" under 11 U.S.C. § 1109(b), Fed. R. Bankr. P. 7024, and Fed. R. Civ. P. 24(a)(1).  Alternatively, the QTCB Noteholder Group satisfies the requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2) and permissive intervention under Fed. R. Civ. P. 24(b).  Additionally, the QTCB Noteholder Group's constituents, as express and intended third party beneficiaries under the PBA leases, are necessary parties to this Adversary Proceeding in accordance with Fed. R. Civ. P. 19 and Fed. R. Bankr. P. 7019.

12.    The QTCB Noteholder Group timely filed this motion to intervene by doing so almost immediately after the commencement of the Adversary Proceeding, just 4 weeks after the filing of the Complaint and prior to any activity, including prior to the deadline for the named Defendant to file an answer.

13.    Moreover, the QTCB Noteholder Group should be granted unlimited intervention rights in order to cure the apparent conflict of interest and potential lack of true adversity between the Plaintiffs and PBA.  The Complaint itself alleges this purported conflict of interest, *see* Complaint (Adv. Proc. 18-00149 (LTS), Dkt. No. 1) ¶¶ 34, 41, which is inherent and unavoidable since the lessor Defendant PBA is an instrumentality of the Commonwealth designed and intended to benefit—not be at odds with—the financial interests of the

---

[7] The form of Proposed Answer attached hereto remains subject to amendment and revision as facts and circumstances regarding the Complaint and the allegations therein develop, additionally, the QTCB Noteholder Group further reserves the right to bring additional defenses, counterclaims and/or crossclaims.

Commonwealth.  The presence of the Committee cannot cure any conflict or impart adversity because it is a Plaintiff whose own self-interest would benefit from any potential conflict.[8]

14.      For these reasons, and as set forth more fully herein, the QTCB Noteholder Group respectfully requests that this Court enter the proposed Order attached hereto as Exhibit B, granting the QTCB Noteholder Group leave to intervene in the Adversary Proceeding for all purposes.

## JURISDICTION AND VENUE

15.      PROMESA section 306(a) grants the United States District Court for the District of Puerto Rico subject matter jurisdiction over this matter. Venue is proper pursuant to PROMESA section 307(a).

16.      The statutory bases for the relief requested herein are Bankruptcy Code section 1109(a), made applicable to the Adversary Proceeding pursuant to PROMESA section 301(a), and Fed. R. Civ. P. 24, made applicable to the Adversary Proceeding by PROMESA section 310 and Fed. R. Bankr. P. 7024.

## BACKGROUND

### I.      The Adversary Proceeding

17.      On May 3, 2017, the FOMB, on behalf of the Commonwealth, commenced the Commonwealth's Title III case pursuant to sections 104(j) and 206 of the PROMESA. On May 5, 2017, the FOMB, on behalf of COFINA, commenced COFINA's Title III case pursuant to sections 104(j) and 206 of the PROMESA.  On May 21, 2017, the FOMB, on behalf of ERS and HTA, commenced the ERS and HTA Title III cases pursuant to sections 104(j) and 206 of the

---

[8] It is doubtful that the Committee has standing to assert the claims in the Complaint.  The Committee is not a lessor, lessee, or third-party beneficiary under any of the PBA leases.  The Committee is simply a representative of the creditors of the Commonwealth.  A creditor of a debtor does not have standing to bring claims against the debtor's lessor.

PROMESA. On July 2, 2017, the FOMB, on behalf of PREPA, commenced PREPA's Title III case pursuant to sections 104(j) and 206 of the PROMESA.

18.    On December 21, 2018, Plaintiffs commenced the Adversary Proceeding by filing the Complaint.  (Adv. Proc. 18-00149 (LTS), Dkt. No. 1). The Summons subsequently was issued against PBA on December 27, 2018.  (Adv. Proc. 18-00149 (LTS), Dkt. No. 5).

19.    The Complaint alleges that the PBA leases are "disguised financings" and not "true leases" because the lease payments were calculated, in part, to repay bonds issued by PBA. Plaintiffs seek, among other relief, a declaration that the PBA leases should be recharacterized as financings and that PBA is not entitled to administrative claims against the Debtors arising out of the post-petition lease payments. The Complaint attacks the portion of the rent payments designed to service debt, but not the portion designed to cover operating expenses, *e.g*., salaries and benefits for hundreds of PBA's employees and payments for trade creditors whose livelihood depends upon the continued payment of rent.

## II.    The Public Buildings Authority

20.    PBA was created and established by the Legislature of Puerto Rico on June 19, 1958, as a public corporation and instrumentality of the Commonwealth, and the exercise of its powers was "deemed and understood to be an essential function" of the Commonwealth.  *See* P.R. Act No. 56 of June 19, 1958, as amended; 22 L.P.R.A. §§ 902, 906. PBA has all corporate powers conferred on corporations under Puerto Rico law, with authority to exercise such powers within Puerto Rico and abroad to the same extent that a natural person would or may do so.  *See* 22 L.P.R.A. § 906(a)(1), (22).

21.    The Legislature created PBA 60 years ago for the purpose of consolidating the acquisition, financing, building, maintenance, and operations related to the vast nonresidential real estate required to provide critical public services to Puerto Rico.  The creation of PBA

allowed the Commonwealth to lower its real estate costs by taking advantage of the efficiencies associated with centralized ownership and management. In addition, by avoiding the use of higher cost private real estate companies and statutorily limiting the rents that PBA could charge to only those amounts sufficient to cover PBA's operating expenses and debt service, the Commonwealth maximized its cost savings.

22.     The Commonwealth and its departments, agencies, instrumentalities, authorities, public corporations, and municipalities all benefit from the PBA's real estate management. PBA's real estate portfolio contains schools, hospitals, healthcare facilities, courts, law enforcement and public safety facilities, agency headquarters, warehouses, workshops, office space, and other physical facilities necessary for the Commonwealth to provide Puerto Rico with essential government services. *See* 22 L.P.R.A. § 903.

23.     PBA fulfills its statutory mandate through various enumerated powers, which give PBA the authority to:

- Control and supervise all of its properties and activities, including the investment of funds, determination of expenses, and sale of any facilities. *See* 22 L.P.R.A. § 906(a)(3).

- Execute contracts and agreements necessary to carry out its purpose. *See id.* § 906(a)(5).

- Acquire property through, among other means, purchase, lease, and eminent domain. *See id*. § 906(a)(6).

- Lease properties to others as a lessor. *See id.* § 906(a)(8).

- Make and issue bonds, and guarantee the payment of its bonds by, among other means, trust indenture of properties of PBA and on all or any of its revenues, income, fees, receipts and interest in contracts, leases, or subleases. *See id.* § 906(a)(10).

- Make the principal and interest payable on any issued bonds payable, in whole or in part, from PBA revenues. *See id*. § 906(a)(11).

- To enter into contracts and agreements with third parties, including, but not limited to, leases, necessary to induce third parties to develop, improve, operate, and manage PBA facilities. *See id*. § 906(a)(18).

-8-

24.     For decades, PBA has issued bonds to support its operations, including approximately $4 billion in principal amount currently outstanding.  These bonds are repaid, as permitted by statute, primarily from rental revenue from lessees of the PBA.

25.     Puerto Rico law requires that lease payments from Commonwealth entities be:

> reasonable and sufficient, taking into consideration the amounts needed by [PBA] to (i) pay the interest, principal, and amortization requirements of the bonds issued by [PBA] for financing such a building, and to provide a reserve for such purposes, and (ii) to pay the operating and maintenance expenses of such a building, including a reasonable proportional amount to cover the administrative expenses of [PBA], the cost for replacing equipment, and other operating and maintenance expenses not occurring annually, and to provide a reserve for such purposes.

22 L.P.R.A. § 916.

26.     However, while PBA's leases with Commonwealth entities may "contain such terms and conditions that by mutual agreement may be stipulated," PBA is nevertheless expressly restricted from entering into any lease that would be "detrimental" to any Commonwealth entity lessee.  *Id*.

27.     All "rent under any lease contract" with a Commonwealth entity was guaranteed by the Commonwealth.  *Id*.

28.     In accordance with Puerto Rico law, therefore, PBA leases and subleases its portfolio of real estate assets primarily to various departments, agencies, instrumentalities, and municipalities of the Commonwealth in exchange for mutually agreed-upon, yet statutorily restricted lease payments, which are then committed by PBA, in part, to pay (and secure payment of) principal and interest on PBA-issued bonds, including the QTCB bonds.

### III.    The QTCB Bonds and QTCB Noteholder Group

29.    The QTCB bonds are qualified tax credit bonds issued by PBA.  The QTCB Noteholder Group, through its members, holds a substantial majority of roughly $877 million in QTCB bonds.

30.    Despite the Commonwealth's guarantee of payment on the vast majority of the PBA leases, the Commonwealth ceased making direct and/or guaranteed lease payments in 2016. As a result, PBA has defaulted on its interest payment obligations with respect to the PBA bonds, including the QTCB bonds.  The Commonwealth similarly defaulted on its guarantee of the PBA bonds.

31.    Each member of the QTCB Noteholder Group has filed a proof of claim against each of the Debtors in these Title III Cases, asserting, in addition to Commonwealth guarantee claims, their respective third party beneficiary rights under the PBA leases for (i) all outstanding prepetition rental payments and all other prepetition amounts due to PBA under, or in connection with, the PBA leases; and (ii) without limitation to the foregoing, all administrative priority claims for all outstanding post-petition rental payments and other post-petition amounts due under, or in connection with, the PBA leases pursuant to 11 U.S.C. §§ 365(d)(3), 503(b)(7), and 507(a)(2), each as incorporated by PROMESA § 301(a).

32.    Unlike PBA, the QTCB Noteholder Group is not an instrumentality of the Commonwealth.  PBA and the various Commonwealth-related lessees under the PBA leases expressly included PBA bondholders as third party beneficiaries under the PBA leases in order to reduce the risk of any non-commercial agreement between lessor (PBA) and lessee (Commonwealth and/or Commonwealth-related entities) that would negatively impact the bondholders' collateral.  For example, section 6.04 of the Master Sublease Contract dated August 24, 2011 and attached to the Complaint as Exhibit A, which is representative, states:

-10-

Benefits.  This Lease Contract shall inure to the benefit of and be binding on the parties hereto, their successors and assigns, ***and shall also inure to the benefit of the holders of bonds issued by [PBA] under the Bond Resolution*** [for the financing of Office Building No. 2030 and other public office buildings], as their respective interest may appear. (emphasis added).

33.    Accordingly, the Adversary Proceeding poses a direct risk to the QTCB Noteholder Group that it will lose bondholder-specific property rights.

## RELIEF REQUESTED

34.    The QTCB Noteholder Group, by and through its attorneys, Bracewell LLP and Correa Acevedo & Abesada Law Offices, PSC, respectfully requests entry of an Order, in the form attached hereto as Exhibit B, authorizing it to intervene fully in the Adversary Proceeding for all purposes.

## ARGUMENT

**I.    The QTCB Noteholder Group Is Entitled To Intervene As A Matter Of Right**

**A.    The QTCB Noteholder Group Has An Unconditional Right to Intervene Under Fed. R. Civ. P. 24(a)(1) And First Circuit Precedent**

35.    Federal Rule of Civil Procedure 24(a)(1) permits a non-party to intervene as a matter of right where it has "an unconditional right to intervene by a federal statute" and "timely" moves to intervene.  Fed. R. Civ. P. 24(a)(1).  Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including . . . a creditor, . . . may raise and may appear and be heard on any issue in a case."  11 U.S.C. § 1109(b).  Section 310 of PROMESA expressly incorporates the entirety of the Federal Rules of Bankruptcy Procedure which includes section 1109(b) of the Bankruptcy Code.  48 U.S.C. § 2170.  As a result, any party in interest, as defined by the Bankruptcy Code, has an unconditional right to intervene, as a matter of right, under Fed. R. Civ. P. 24(a)(1).

-11-

36.     The First Circuit has interpreted the interplay between Bankruptcy Code section 1109(b) and Fed. R. Civ. P. 24(a)(1) in the exact context presented by this Motion—a motion to intervene by creditors in an adversary proceeding arising out of these PROMESA-based bankruptcy proceedings involving the Plaintiffs—and held that the Debtors' creditors are parties in interest with "an unconditional right to intervene" in adversary proceedings. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 872 F.3d 57, 59–60 (1st Cir. 2017).

37.     Here, there can be no legitimate dispute that the QTCB Noteholder Group (through its members) is a creditor of the Debtors and PBA and, as such, is a "party in interest" under Bankruptcy Code section 1109(b).  Moreover, the QTCB Noteholder Group (through its members) is an express third party beneficiary of the PBA leases, which the Plaintiffs are seeking, in effect, to nullify in this Adversary Proceeding.[9]  Indeed, each of the four leases appended to the Complaint specifically identify the QTCB Noteholder Group as beneficiaries. *See*, *e.g.*, Complaint, Exhibit D (Lease Contract between PBA and the Treasury Department of the Commonwealth of Puerto Rico dated March 1, 1997, section 6.05).  This further solidifies its status as a party in interest.  *See In re Rovira Ortiz*, No. 03-04534 SEK, 2006 WL 3898381, at *2 (Bankr. D.P.R. June 2, 2006) ("A party in interest is defined as one whose pecuniary interests are directly affected by the bankruptcy proceedings.") (citations and internal quotations omitted).

---

[9] The consequences to the QTCB Noteholders and PBA of an adverse determination by the Court with respect to the validity of the PBA leases or the recharacterization thereof goes beyond the mere disallowance of an administrative expense claim.  Indeed, it is abundantly clear now that the Complaint is the first stage of a multi-stage effort by the Plaintiffs to obtain a judicial determination that the PBA bonds are direct obligations of the Commonwealth and should therefore be counted towards the Commonwealth's constitutional debt limit.  *See Omnibus Objection of (I) Financial Oversight and Management Board, Acting through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* (Case No. 17-3283 (LTS), Dkt. No. 3299) at 20.

-12-

Further, the QTCB Noteholder Group's constituents have a direct financial stake in the outcome of this Adversary Proceeding because the resolution of the issues in the Complaint directly impacts, among other things, the claims for administrative priority of rents payable under the PBA leases.  *See In re El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 417 (Bankr. D.P.R. 2006) ("Generally, any person or entity, who holds a financial stake in the outcome of the debtor's estate, is a party in interest.").

38.     There is also no credible question that the QTCB Noteholder Group has timely filed this Motion.  In the First Circuit, "the concept of timeliness . . . is not measured, like a statute of limitations, in terms of specific units of time, but rather derives meaning from assessment of prejudice in the context of the particular litigation."  *P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 15 (1st Cir. 2011) (finding no prejudice where parties sought intervention six weeks after their counsel became aware that named defendants would not adequately defend their clients' interests). "The purpose of the [timeliness] requirement . . . is to prevent last minute disruption of painstaking work by the parties and the court." *Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992) (quoting *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980)).  The factors considered in determining timeliness include: "(1) the length of time the applicant knew or reasonably should have known that its interest was imperiled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiosyncratic circumstances which, fairly viewed, militate for or against intervention." *Id*. at 1231.

39.     Here, the QTCB Noteholder Group has filed the motion to intervene at the early stages of the Adversary Proceeding, even before the named Defendant's deadline to answer the

-13-

Complaint.  The QTCB Noteholder Group learned of the Complaint on the day it was filed, immediately alerted Plaintiffs of its intention to intervene, sought to communicate with Defendant's counsel, and filed this motion—attaching its Proposed Answer within 4 weeks.  The QTCB Noteholder Group therefore acted with alacrity.  The fact that the Motion precedes all activity in the Adversary Proceeding also eliminates any conceivable prejudice to the existing parties.  However, denial of intervention would deny the QTCB Noteholder Group the ability to enforce its contractual third-party beneficiary rights to the PBA leases and would leave it without recourse to defend its property rights.

40.     Given the speed with which it has acted vis-à-vis the status of the Adversary Proceeding, the QTCB Noteholder Group has established the timeliness of its Motion.

41.     Accordingly, for the above-stated reasons, and due to the apparent conflict of interest and potential lack of true adversity, as alleged in the Complaint itself, *see* Complaint (Adv. Proc. 18-00149 (LTS), Dkt. No. 1) ¶¶ 34, 41, and as more fully detailed below, *see infra* ¶¶ 44-46, the QTCB Noteholder Group should be permitted to intervene in full, and without any limitation, as an unconditional right under Fed. R. Civ. P. 24(a)(1) and 11 U.S.C. § 1109(b).

**B.     In The Alternative, The QTCB Noteholder Group May Intervene As A Matter Of Right Under Fed. R. Civ. P. 24(a)(2)**

42.     Fed. R. Civ. P. 24(a)(2) permits intervention as a matter of right where a putative intervenor demonstrates "(i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party." *P.R. Tel. Co.*, 637 F.3d at 14.

-14-

43. The QTCB Noteholder Group satisfies the first prong—timeliness—for the reasons set forth above. *See supra* ¶¶ 38-40. Likewise, the QTCB Noteholder Group satisfies the second and third prongs for the same reasons that it qualifies as a party in interest. *See supra* ¶ 35-37. "An intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006). In the Adversary Proceeding, Plaintiffs seek to adjudicate the express contractual and economic rights and interests of PBA bondholders vis-à-vis the PBA leases, and ask for relief that would not just materially impact, but in fact would outright eliminate the contractual rights of the QTCB Noteholder Group to enforce the terms of the PBA leases and its lien on the PBA's rental income. Additionally, Plaintiffs seek relief that would deprive the QTCB Noteholder Group of the benefits of its administrative priority claim for all post-petition unpaid rent.

44. Finally, with respect to the fourth prong, "[t]ypically, an intervenor need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate." *Id*. at 545; *see also P.R. Tel. Co*., 637 F.3d at 16-17 (intervention appropriate where named defendant would not aggressively advocate for defendant-intervenor's interests). Under this low bar, a putative intervenor is only required to show that the "representation *may be* inadequate, not that it *is* inadequate." *Nextel Commc'ns of the Mid-Atl., Inc., d/b/a Nextel Commc'ns v. Hanson*, 311 F. Supp. 2d 142, 152 (D. Mass. 2004) (emphasis in original). Courts in the First Circuit consider three factors in assessing whether an intervenor's interests are otherwise adequately represented by the parties: "(1) [a]re the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) is that present party capable and willing to make such

arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit?"  *Id*. at 150-51 (citing *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982)).

45.     Here, the QTCB Noteholder Group's interests will not, and cannot, be adequately represented by the present parties.   Only the QTCB Noteholder Group can properly and adequately protect its own express third-party beneficiary rights.   Moreover, the QTCB Noteholder Group's interests may materially differ from those of PBA.   PBA has only just engaged separate counsel to represent its interests in this proceeding brought against it by its own government. Even if PBA intends to aggressively and independently defend its rights as the lessor of the PBA leases, PBA nevertheless entered into the PBA leases with related parties. That fact is more than sufficient to create a potential conflict of interest, which can only be cured by the full participation of the QTCB Noteholder Group.   Indeed, Plaintiffs allege that the Debtors and PBA are under "common control of the Governor."   Complaint (Adv. Proc. 18-00149 (LTS), Dkt. No. 1) ¶¶ 34, 41.

46.     Regardless of the ultimate truth of Plaintiffs' allegation, which must, as a matter of law, be taken as true at this stage of the Adversary Proceeding, the fact remains that the PBA is subject to some level of gubernatorial influence.  *See* 22 L.P.R.A. § 904 (stating that Governor selects certain members of the PBA Board of Directors and appoints replacement members). Consequently, there is a substantial and legitimate concern that true adversity between the Plaintiffs and Defendant is not present here.  *See Nextel Commc'ns of the Mid-Atl., Inc*., 311 F. Supp. 2d at 153 (recognizing that putative intervenor's rights were not adequately represented where, although the defendant and putative intervenor's legal arguments and interests were likely aligned, there existed "potential for divergence of interests because, while the [defendant]

-16-

presently opposes construction of the tower, it might change or soften that position based on its broader geographic and institutional interests."). The full participation of the QTCB Noteholder Group is necessary to ensure that its rights are adequately defended and that it receives an independent, arm's length adjudication of its third-party beneficiary and lien rights.

47.     Thus, alternatively, the QTCB Noteholder Group satisfies the standard for intervention as a matter of right under Fed. R. Civ. P. 24(a)(2).

## II.     Alternatively, The Court Should Grant The QTCB Noteholder Group The Right To Intervene Under Fed. R. Civ. P. 24(b)

48.     Even absent the unconditional right to intervene under Fed. R. Civ. P. 24(a)(1) and the ability to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), the QTCB Noteholder Group alternatively should be granted full intervention rights under the permissive intervention standard set by Fed. R. Civ. P. 24(b). Rule 24(b) provides that a "court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

49.     "[T]he threshold for permissive intervention is low," *Sea Hunters, L.P. v. S.S. Port Nicholson*, No. 2:08-CV- 272-GZS, 2013 WL 5435636, at *1 (D. Me. Sept. 29, 2013), and may be granted where the putative intervenor (i) files a "timely motion," (ii) "has a claim or defense that shares with the main action a common question of law or fact," and (iii) will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *see Daggett v. Comm'n on Gov't Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999).

50.     As set forth above, the Motion is timely and intervention will not unduly prejudice the existing parties. Moreover, the QTCB Noteholder Group intends to assert claims and defenses directly responsive to a common question of fact and law, *i.e.*, whether the PBA

-17-

leases are "true leases" subject to section 365(d)(3) of the Bankruptcy Code and whether post-petition rental payments should continue to be administrative claims. The interests of judicial efficiency will be best served by allowing the QTCB Noteholder Group to intervene in this matter. In contrast, denial of intervention will prejudice the due process rights of the QTCB Noteholder Group to adjudicate their third-party beneficiary rights and the enforceability of their lien rights. Through full intervention, discovery will be coordinated with the Defendant and can move forward in a single action, thereby reducing duplicative work. *See, e.g., Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 100 (W.D.N.C. 2009); *Mahurin's Constr. Co. v. Granite RE, Inc.*, 2004 WL 2249489, at *1 (D. Kan. 2004).

51. Therefore, in the absence of intervention pursuant to Fed. R. Civ. P. 24(a)(1) or (a)(2), the Court should grant the QTCB Noteholder Group's request for permissive intervention.

**III.    The QTCB Noteholder Group is a Necessary Party Under Fed. R. Civ. P. 19**

52. For the same reasons articulated above, the QTCB Noteholder Group qualifies as a necessary party, and therefore should be afforded unqualified rights to participate in the Adversary Proceeding. Fed. R. Civ. P. 19 provides, in relevant part, that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction **must be joined as a party** if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . . Fed. R. Civ. P. 19(a)(1)(B)(i) (emphasis added). "Boiled down to its essence, Rule 19 requires that an action be dismissed if there is an absent party . . . whose interest in the dispute is such that to proceed without that party could substantially prejudice either that party or others." *Ticket Ctr., Inc. v. Banco Popular de Puerto Rico*, No. CIV04-2062GAG/BJM, 2008 WL 859275, at *5 (D.P.R. Mar. 28, 2008) (citations omitted). "[N]o procedural principle is more deeply imbedded in the

-18-

common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002).   It is well accepted that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Id.* at 1157.

53.     As discussed above, the QTCB Noteholder Group's ability to protect its interests will be impaired or impeded if it is not joined as a party.  *See generally Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132, 135 (1st Cir. 1989) (observing that Fed. R. Civ. P. 24(a)(2) is a counterpart to Fed. R. Civ. P. 19(a)(2)); *Lennox Industries, Inc. v. Caicedo Yusti*, 172 F.R.D. 617, 625 (D. P.R. 1997)("[movant] qualifies as a Rule 19(a) 'necessary' party, for much the same reasons that it qualified as a Rule 24(a) intervenor as of right.").  Further, if the QTCB Noteholder Group is not permitted to intervene, or joined as a party, the Adversary Proceeding should be dismissed for failure to join a necessary, indispensable party.  *See Ticket Ctr., Inc.*, 2008 WL 859275, at *5.

## CONCLUSION

WHEREFORE, the QTCB Noteholder Group respectfully requests that the Court grant leave to intervene and/or join as a party in this Adversary Proceeding, enter an Order in the form attached hereto as Exhibit B and grant such other relief as the Court deems just and proper.

-19-

Respectfully Submitted, in San Juan, Puerto Rico, this 18th day of January, 2019.

**BRACEWELL LLP**

*/s/ Kurt A. Mayr*
Kurt A. Mayr (*pro hac vice*)
David L. Lawton (*pro hac vice*)
Shannon B. Wolf (*pro hac vice*)
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 256-8534
Email: kurt.mayr@bracewell.com
Email: david.lawton@bracewell.com
Email: shannon.wolf@bracewell.com


*Counsel for the QTCB Noteholder Group*

**CORREA ACEVEDO & ABESADA
LAW OFFICES, P.S.C.**
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R.  00968
Tel. (787) 273-8300; Fax (787) 273-8379


*/s/ Roberto Abesada-Agüet*
USDC-PR No. 216706
E-Mail: ra@calopsc.com


  */s/ Sergio E. Criado*
Sergio E. Criado
USDC-PR No. 226307
E-Mail: scriado@calopsc.com

*Co-Counsel for the QTCB Noteholder
Group*

-20-

**I HEREBY CERTIFY** that on January 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send automatic notifications of such filing to all attorneys of record.

/s/ Kurt A. Mayr
Kurt A. Mayr
Bracewell LLP
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Tel: (860) 254-8534
Email: kurt.mayr@bracewell.com

/s/ Roberto Abesada- Agüet
Roberto Abesada-Agüet

/s/ Sergio E. Criado
Sergio E. Criado

Centro Internacional de Mercadeo II
#90 Carr. 165 Suite 407
Guaynabo, Puerto Rico 00968-8064
ra@calopsc.com
(787) 273- 8300