**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,[1]<br><br>                              Debtors. | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.<br><br>  and<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA),<br><br>   Plaintiffs,<br><br>v.<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>   Defendant. | Adv. Proc. No. 18-00149-LTS<br><br><br><br>**MOTION OF THE PBA SUB-GROUP OF THE COMMONWEALTH BONDHOLDER GROUP FOR LEAVE TO INTERVENE** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

The PBA Sub-Group of the Commonwealth Bondholder Group (the "PBA Sub-Group")[2] respectfully submits this motion to intervene as a defendant in the above-captioned adversary proceeding (the "Adversary Proceeding") pursuant to Federal Rule of Civil Procedure 24, made applicable herein by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2170, and Federal Rule of Bankruptcy Procedure 7024. The PBA Sub-Group's Proposed Answer is attached hereto as Exhibit A.[3]

## PRELIMINARY STATEMENT

The PBA Sub-Group, through its members, holds more than $800 million in bonds issued by the defendant, the Puerto Rico Public Buildings Authority (the "PBA" or "Defendant"), and guaranteed by a pledge of the full faith and credit of the Commonwealth of Puerto Rico (the "Commonwealth"). The PBA Sub-Group seeks to intervene in this Adversary Proceeding to protect its legal and economic rights under those PBA bonds, including express third-party

---

[2] The Commonwealth Bondholder Group is the group of holders of bonds issued or guaranteed by the Commonwealth, as identified in the *Verified Statement of the Commonwealth Bondholder Group Pursuant to Federal Rule of Bankruptcy Procedure 2019*, Dkt. No. 4743 in Case No. 17-3283-LTS. The PBA Sub-Group consists of a subset of members of the Commonwealth Bondholder Group that hold bonds issued by the Puerto Rico Public Buildings Authority and guaranteed by the Commonwealth. As of the date hereof, the members of the PBA Sub-Group are Canyon Capital Advisors LLC, on behalf of its participating clients; Davidson Kempner Capital Management LP, as investment advisor to its affiliated funds; Monarch Alternative Capital LP, on behalf of certain of the funds and accounts it manages; and OZ Management LP, on behalf of its participating funds and/or accounts.

The PBA Sub-Group submits this motion and any related documents exclusively on its own behalf. All of the statements contained herein are made by the PBA Sub-Group alone and do not necessarily reflect the position or belief of any other individual creditor or member of the Commonwealth Bondholder Group. The PBA Sub-Group does not assume any fiduciary or other duties or responsibilities to any individual, creditor, or member of the Commonwealth Bondholder Group.

[3] The PBA Sub-Group's Proposed Answer remains subject to amendment and revision as facts and circumstances regarding the Complaint and its allegations develop. The PBA Sub-Group further reserves the right to bring additional defenses, counterclaims, and/or crossclaims.

1

beneficiary rights in connection with more than 1,900 leases between the PBA and Commonwealth-related entities.

In this Adversary Proceeding, the Financial Oversight and Management Board (the "Oversight Board") and the Committee of Unsecured Creditors (the "UCC") (together with the Oversight Board, the "Plaintiffs") seek to recharacterize the PBA's leases as disguised financings, thus disallowing substantial administrative priority claims of the PBA and its bondholders, including members of the PBA Sub-Group. Because this litigation directly threatens the interests of the PBA Sub-Group, the PBA Sub-Group qualifies as a "party in interest" granted an unconditional right to intervene under Section 1109(b) of the Bankruptcy Code and is accordingly entitled to intervene under Federal Rule of Civil Procedure 24(a)(1). For similar reasons, the PBA Sub-Group is entitled to intervene as of right under Rule 24(a)(2), as a party whose interests may be impaired by this litigation and who is not adequately represented by the existing parties. In all events, permissive intervention is warranted under Rule 24(b) because basic fairness requires that the PBA Sub-Group be permitted to participate in this litigation.

## BACKGROUND

1. The Puerto Rico Legislative Assembly created the PBA on June 19, 1958, as a public corporation charged with planning, designing, building, administering, and maintaining physical facilities that are used to provide government services to the people of Puerto Rico. See 22 L.P.R.A. §§ 902, 903. The facilities owned and maintained by the PBA include schools, hospitals, health facilities, courts, headquarters, and other public buildings. See *id.* § 903.

The PBA is an instrumentality of the Commonwealth, with legal existence separate from the Commonwealth. Its operations are directed by its Board of Governors. 22 L.P.R.A. §§ 902, 904. Commonwealth law vests the PBA with broad powers, including the power "[t]o have

2

perpetual existence as a corporation," *id.* § 906(a)(1), "[t]o have complete control and supervision over each and every one of its properties and activities," *id.* § 906(a)(3), and "[t]o sue and be sued," *id.* § 906(a)(4). Of particular relevance here, the PBA is also empowered "[t]o execute contracts, agreements and other instruments" to fulfill its statutory mandate, *id.* § 906(a)(5), "[t]o borrow money" and "make and issue bonds," *id.* § 906(a)(10), and to sell, lease, and otherwise transfer its real and personal property, *id.* § 906(a)(13).

Exercising these statutory grants of authority, the PBA has entered into lease contracts with the Commonwealth and Commonwealth-related entities at issue in this Adversary Proceeding. These lease contracts are the PBA's primary source of income, providing the funding that is used for, among other purposes, salaries for more than 1,000 employees, maintenance and infrastructure improvement for the PBA's real estate portfolio, debt service, and general operating expenses.[4] The Commonwealth pledged its good faith and credit for the payment of rent under any lease contract executed between the PBA and the Commonwealth or Commonwealth-related entities. 22 L.P.R.A. § 916.

For decades, the PBA also exercised its statutory authority to issue bonds to finance its facilities, including approximately $4 billion in principal amount currently outstanding. See 22 L.P.R.A. §§ 906-907a. The PBA bonds are repaid, as permitted by statute, primarily from a portion of the rental revenues that the PBA collects from its leases. By statute, payments from the Commonwealth and its related entities must be:

> [R]easonable and sufficient, taking into consideration the amounts needed by the Authority to (i) pay the interest, principal, and amortization requirements of the bonds issued by the Authority for financing such a building, and to provide a reserve for such purposes, and (ii) to pay the operating and maintenance expenses of such a building, including a reasonable proportional amount to cover the

---

[4] See Commonwealth of Puerto Rico Financial Information and Operating Data Report at 128-29, Dec. 18, 2016, https://emma.msrb.org/ER1001309-ER783509-ER1184694.pdf.

3

    administrative expenses of the Authority, the cost for replacing equipment, and other operating and maintenance expenses not occurring annually, and to provide a reserve for such purposes.

*Id.* § 916. Separately, all "rent under any lease contract" with a Commonwealth entity is guaranteed by the Commonwealth. *Id.*

Thus, the PBA leases and subleases its real estate portfolio primarily to the Commonwealth, to the Commonwealth's agencies and departments, to public instrumentalities, and to municipalities. It uses payments on these leases to fund its own operations, including by committing portions of the rental payments to pay principal and interest on the PBA-issued bonds.

2. Through its members, the PBA Sub-Group holds more than $800 million in bonds issued by the PBA and guaranteed by the Commonwealth. As PBA bondholders, the members of the PBA Sub-Group are express third-party beneficiaries of the PBA's leases. For example, Section 6.04 of the Master Sublease Contract dated August 24, 2011, and attached to the Complaint as Exhibit A, which is representative, states:

> <u>Benefits</u>. This Master Sublease Contract shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, *and shall also inure to the benefit of the holders of the bonds issued [by the PBA] under the Bond Resolution*, as their respective interest may appear.

(emphasis added).

Despite the Commonwealth's guarantee of payment on the majority of the PBA's leases, the Commonwealth ceased making direct and guaranteed rental payments in 2016. Thus, the PBA has defaulted on its interest payments due on the PBA bonds. Likewise, the Commonwealth has defaulted on its guarantee of the PBA Bonds.

3. The Complaint in this Adversary Proceeding alleges that the PBA leases with the Debtors are "disguised financings" and not "true leases" because the lease payments were calculated, in part, to repay bonds issued by the PBA. Complaint ¶¶ 2-3, 24-32. Plaintiffs seek,

4

among other relief, a declaration that the PBA leases should be recharacterized as financing transactions, that Debtors have no obligation make payments on their PBA leases, and that the PBA is not entitled to administrative claims against the Debtors arising out of the post-petition lease obligations. *Id.* ¶¶ 37-48. Thus, the Complaint seeks to extinguish the lease payments that were designated as the source of repayment for the PBA bonds held by the PBA Sub-Group.

## RELIEF REQUESTED

The PBA Sub-Group respectfully requests entry of an order, substantially in the form attached hereto as Exhibit B, authorizing it to intervene fully in the Adversary Proceeding for all purposes.

## ARGUMENT

### I. THE PBA SUB-GROUP IS ENTITLED TO INTERVENE AS OF RIGHT

#### A. The PBA Sub-Group Has An Unconditional Right To Intervene Under Rule 24(a)(1)

Under Federal Rule of Civil Procedure 24(a)(1), a non-party is entitled to intervene as of right by filing a "timely" motion to intervene if it "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). The PBA Sub-Group meets both requirements.

*First*, this motion is timely because this Adversary Proceeding is still in its infancy and has yet to proceed to any substantive stage of litigation. "Timeliness" for purposes of intervention "derives meaning from assessment of prejudice in the context of the particular litigation." *P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 15 (1st Cir. 2011). The PBA Sub-Group filed this motion to intervene at the initiation of this litigation, within weeks of learning of this adversary proceeding, and by the deadline on which the PBA was required to file an answer to Plaintiffs' complaint. Consequently, the PBA Sub-Group's intervention at this stage would cause no prejudice to any party.

5

*Second*, the PBA Sub-Group is granted an unconditional right to intervene by Section 1109(b) of the Bankruptcy Code, made applicable herein by Section 301(a) of PROMESA, 48 U.S.C. § 2161(a). Section 1109(b) provides that any "party in interest, including . . . a creditor, . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). As the First Circuit has held, Section 1109(b) provides an unconditional right to intervene in an adversary proceeding. See *In re Financial Oversight & Mgmt. Bd. for P.R.*, 872 F.3d 57, 63 (1st Cir. 2017). The PBA Sub-Group comprises creditors of the Commonwealth and thus expressly qualifies as a "party in interest" within the meaning of Section 1109(b). Moreover, the members of the PBA Sub-Group holding PBA bonds are creditors of the PBA and are express third-party beneficiaries of the PBA leases. That financial stake in this litigation demonstrates the PBA Sub-Group's status as a party in interest. See *In re Rovira Ortiz*, No. 03-04534 SEK, 2006 WL 3898381, at *2 (Bankr. D.P.R. June 2, 2006) ("A party in interest is defined as one whose pecuniary interests are directly affected by the bankruptcy proceedings.") (internal quotation marks omitted).

The PBA Sub-Group is therefore entitled to intervene under Rule 24(a)(1).

**B.      The PBA Sub-Group Is Entitled To Intervene Under Rule 24(a)(2)**

Intervention as of right under Rule 24(a)(2) is proper if the movant establishes "(i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party." *P.R. Tel. Co.*, 637 F.3d at 14 (internal quotation marks omitted); accord Fed. R. Civ. P. 24(a)(2). These four elements must "'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation." *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998) (quoting *United States v. Hooker Chems.*

6

*& Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984)). The PBA Sub-Group is entitled to intervene as of right because all four requirements are satisfied here.

*First*, as we have explained above, this motion is timely. See p. 6, *supra*.

*Second*, the PBA Sub-Group has "a significantly protectable interest" in this litigation "that is direct, not contingent." *Patch*, 136 F.3d at 205 (internal quotation marks omitted). The members of the PBA Sub-Group holding PBA bonds are express third-party beneficiaries of the PBA leases that Plaintiffs seek to recharacterize through this Adversary Proceeding, and thus have a direct interest in the issues that will be litigated in this case.

*Third*, if the PBA Sub-Group is not permitted to intervene, this Adversary Proceeding would pose "a realistic threat" to the PBA Sub-Group's "ability to protect [its] interest." See *P.R. Tel. Co.*, 637 F.3d at 14 (internal quotation marks omitted). "[W]hether the disposition of a case might impair or impede the potential intervenor's ability to protect its interest should be addressed in practical terms." *Cabot LNG Corp. v. P.R. Elec. Power Auth.*, 162 F.R.D. 427, 430 (D.P.R. 1995). As the First Circuit has held, the threshold for intervention is satisfied when the litigation "could result . . . in an order directly affecting [the intervenor's] contractual rights." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006). This Adversary Proceeding threatens to do just that, by seeking recharacterization of the PBA leases that provide the primary source of funding for payment of the PBA bonds and as to which members of the PBA Sub-Group are third-party beneficiaries. Plaintiffs are therefore seeking an adjudication of the express contractual and economic rights of the PBA bondholders.

*Fourth*, the PBA Sub-Group has more than established the "'minimal' showing that the representation afforded by a named party would prove inadequate" that is necessary to justify intervention. *B. Fernandez & Hnos.*, 440 F.3d at 545 (quoting *Trbovich v. United Mine Workers*

7

*of Am.*, 404 U.S. 528, 538 n.10 (1972)). In particular, inadequate representation is established here because the PBA Sub-Group's interests "are sufficiently different in kind or degree from those of the named part[ies]." *Id.* at 546.

As an initial matter, the PBA cannot properly and adequately protect the express third-party beneficiary rights of its bondholders. Those are rights that belong to the PBA bondholders, not to the PBA itself. Intervention is therefore warranted on that basis alone.

More broadly, the interests of the PBA Sub-Group may differ materially from those of the PBA. The PBA has only recently engaged separate counsel to represent its interests in this proceeding brought against it by its own government. And the Complaint itself alleges that Puerto Rico's Governor exerts some measure of influence over the PBA. See Complaint ¶ 34. That allegation is more than sufficient to create a potential conflict of interest, which can be cured only by the full participation of the PBA bondholders, including the PBA Sub-Group.

Intervention as of right under Rule 24(a)(2) is therefore warranted.

## II. THE PBA SUB-GROUP SHOULD BE PERMITTED TO INTERVENE

Even if this Court were to hold that the PBA Sub-Group does not qualify for intervention as of right, it should nonetheless permit the PBA Sub-Group to intervene under Rule 24(b). The Court "enjoys very broad discretion" to permit intervention, see *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999), where the proposed intervenor (i) files a "timely motion"; (ii) "has a claim or defense that shares with the main action a common question of law or fact"; and (iii) will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

As explained above, the PBA Sub-Group satisfies the first and third criteria. See pp. 6, *supra*. Hence, the sole question is whether the PBA Sub-Group "has a claim or defense that shares with the main action a common question of law or fact." It plainly does: Through intervention,

8

the PBA Sub-Group proposes to dispute Plaintiffs' contention that the PBA's leases should be recharacterized as disguised financing transactions, which is the basic premise of Plaintiffs' claims that the leases do not give rise to administrative-priority claims and are not subject to treatment under Section 365(d)(3) of the Bankruptcy Code. *E.g.*, Complaint ¶¶ 43-44, 47-48. The PBA Sub-Group's defenses are therefore directly responsive to the claims that are already at issue in this litigation.

The circumstances of this case would also warrant a favorable exercise of the Court 's discretion. As explained above, litigating this case without the PBA Sub-Group's participation would threaten substantial prejudice to the PBA Sub-Group's interests. Fairness therefore dictates that the PBA Sub-Group be granted intervention in this litigation.

Thus, if the Court were to conclude that intervention as of right is unavailable, the PBA Sub-Group should be permitted to intervene.

## **CONCLUSION**

The motion to intervene should be granted.

Dated: January 28, 2019  Respectfully submitted,

/s/ Ramón Rivera Morales  /s/ Donald S. Bernstein
J. Ramón Rivera Morales  Donald S. Bernstein
USDC-PR Bar No. 200701  Brian M. Resnick
Andrés F. Picó Ramírez  Angela M. Libby
USDC-PR Bar No. 302114  DAVIS POLK & WARDWELL LLP
JIMÉNEZ, GRAFFAM & LAUSELL  450 Lexington Avenue
P.O. Box 366104  New York, NY 10017
San Juan, PR 00936  Telephone: (212) 450-4000
Telephone: (787) 767-1030  Email: donald.bernstein@davispolk.com
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

/s/ Andrew N. Rosenberg  /s/ Lawrence S. Robbins
Andrew N. Rosenberg  Lawrence S. Robbins
Karen R. Zeituni  Gary A. Orseck
PAUL, WEISS, RIFKIND, WHARTON  Kathryn S. Zecca
& GARRISON LLP  Mark T. Stancil
1285 Avenue of the Americas  Donald Burke
New York, NY 10019  ROBBINS, RUSSELL, ENGLERT, ORSECK,
Telephone: (212) 373-3000  UNTEREINER & SAUBER LLP
Email: arosenberg@paulweiss.com  1801 K Street, N.W., Suite 411-L
 Washington, DC 20006
 Telephone: (202) 775-4500
 Email: lrobbins@robbinsrussell.com

*Counsel to the PBA Sub-Group of the Commonwealth Bondholder Group*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ J. Ramón Rivera Morales
J. Ramón Rivera Morales
