## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    and<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA),<br><br>    Plaintiffs,<br>v.<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>    Defendant. | Adv. Pro. No. 18-00149<br><br><br><br>**<u>PBA FUNDS' ANSWER</u>** |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

1

ny-1358260

The PBA Funds,[2] by their undersigned counsel, by virtue of their Motion to Intervene, hereby responds to and answers the Complaint filed by Plaintiffs.

Plaintiffs' Complaint is a meritless attempt by the Official Committee of Unsecured Creditors of All Title III Debtors (other than COFINA) (the "UCC") to benefit certain creditors of the Commonwealth by attacking the Puerto Rico Public Buildings Authority ("PBA") and the bona fide leases it has issued to finance the construction of buildings occupied by real tenants (the "Leases"). Since 1958, the PBA has operated through a legislative mandate that enables it to issue bonds to finance, manage, and operate public buildings, and to collect rent to pay for said operation and financing. Try as they might to transform the character of the Leases, Plaintiffs cannot avoid the fact that debtors must pay for the non-residential space that they rent until they assume or reject the underlying lease. Here, none of the relevant Leases has been rejected and tenants remain in the buildings. Yet, through its Complaint, the UCC is attempting to halt rent payments under the Leases while simultaneously conceding that a portion of the rent payments cover ongoing operating expenses that must be paid. These Leases, which have operated and were treated as true leases for decades, were not magically converted into disguised financings simply because the Commonwealth filed for bankruptcy.

To the extent the Complaint asserts factual allegations in its headings, the PBA Funds deny those allegations. To the extent that any matters in the Complaint are not expressly admitted, they are denied. The PBA Funds respond to all remaining factual allegations as follows:

---

[2] *See Supplemental Verified Statement of the PBA Funds Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Case No. 17-3283-LTS, Docket No. 3299]. The PBA Funds intend to file a supplemental verified statement in accordance with Rule 2019 of the Federal Rules of Bankruptcy Procedure and the *Order Further Amending Case Management Procedures* [Case No. 17-3283-LTS, Docket No. 4866].

2

ny-1358260

The PBA Funds deny the allegations in the Complaint's unnumbered introductory paragraph, except the PBA Funds admit that Plaintiffs purports to bring this action under Federal Rules of Bankruptcy Procedure 7001(7) and (9), made applicable to these Title III cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act (48 U.S.C. § 2170) ("PROMESA"). Further, the PBA Funds deny that the UCC—which is not a tenant, landlord or third-party beneficiary under any of the leases at issue—has standing to bring this action as a plaintiff. *See Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 872 F.3d 57, 64 n.7 (1st Cir. 2017) ("the interests of a party seeking to participate lie within the 'zone of interests' protected by the particular statute or legal rule implicated in the given proceeding") (citations omitted); *see also Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82, 86 (2d Cir. 2007) (explaining that creditors' committees have standing to bring adversary proceedings in very limited circumstances).

**NATURE OF PROCEEDING**

1. The PBA Funds deny the allegations in Paragraph 1, except admit that the PBA is an instrumentality of the Commonwealth created to issue bonds (the "PBA Bonds") to finance the acquisition, construction and/or improvement of office space and other facilities (collectively, the "PBA Facilities") used by departments, agencies, instrumentalities, authorities, public corporations, and municipalities of the Commonwealth (the "Public Occupants") for government operations and providing essential services to the public. The PBA Funds also admit that more than $4 billion in aggregate principal amount of PBA Bonds remain outstanding. The PBA Funds specifically deny that the Leases are not arm's length rental transactions designed to grant the Public Occupants temporary use of the PBA Facilities and that the sole purpose of the Leases is to provide a vehicle for the Commonwealth to repay the PBA Bonds

through the Lessee's rent payments. To the contrary, the Leases and underlying rent payments are structured in precisely the manner set forth in the 1958 Public Buildings Authority Enabling Act ("PBA Enabling Act") and the Resolution No. 468, adopted on June 22, 1995 (the "1995 Bond Resolution") and constitute legitimate leases that provide for the exchange of tenancy for the consideration of rent. *See* 22 L.P.R.A. § 901 *et seq*.[3] The PBA Enabling Act charges the PBA with planning, designing, administering, and providing maintenance for physical facilities related to government services, such as schools, health facilities, offices, headquarters, courts, warehouses, and workshops. *See* 22 L.P.R.A. § 903. These tasks are carried out by PBA's more than 1,000 employees. To that end, the PBA has the authority to issue bonds "to finance office buildings and other facilities, which are leased to various departments, public agencies and instrumentalities of the Commonwealth of Puerto Rico."[4] The PBA Funds deny the allegations contained in footnote 3 to Paragraph 1. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 1, and therefore deny those allegations.

2. The PBA Funds deny the allegations in Paragraph 2, which also contains legal conclusions to which no answer is required. In fact, that the Leases are not disguised financings because, among other things, they leave no ownership rights or interests to the tenant.

3. The PBA Funds deny the allegations in Paragraph 3, which also contains legal conclusions to which no answer is required.

---

[4] See Government of Puerto Rico, Government Development Bank of Puerto Rico, Investor Resources, available at http://www.gdb-pur.com/investors_resources/pr_public_building.html.

ny-1358260

## PARTIES

4. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, and therefore deny those allegations.

5. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5, and therefore deny those allegations.

6. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore deny those allegations.

## JURISDICTION AND VENUE

7. The PBA Funds admit the allegations in Paragraph 7.

8. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore deny those allegations.

9. The PBA Funds deny the allegations of Paragraph 9, except admit that the Court entered an order resolving their motion, which speaks for itself and contains provisions omitted from Paragraph 9.

10. The PBA Funds deny the allegations of Paragraph 10, except admit that the Court entered an order resolving their motion, which speaks for itself and contains provisions omitted from Paragraph 10.

11. The PBA Funds deny the allegations in Paragraph 11.

12. The PBA Funds deny the allegations in Paragraph 12, which also contains legal conclusions to which no answer is required.

13. The PBA Funds deny the allegations in Paragraph 13, which also contains legal conclusions to which no answer is required.

ny-1358260

# BACKGROUND

**Overview of PBA**

14. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore deny those allegations.

15. The PBA Funds deny the allegations in Paragraph 15, except admit that the PBA was authorized to issue the PBA Bonds to finance the PBA facilities and enter into Leases.

**The PBA Bonds**

16. The PBA Funds deny the allegations in Paragraph 16, except admit that: PBA issued multiple series of PBA Bonds pursuant to certain bond resolutions, including: (i) Resolution No. 77, adopted on November 16, 1970 (the "<u>1970 Bond Resolution</u>"); (ii) the 1995 Bond Resolution (with the 1970 Bond Resolution, the "<u>Bond Resolutions</u>"), as supplemented by separate resolutions authorizing the issuance of each series of PBA Bonds under the 1995 Bond Resolution, including without limitation, (a) Resolution No. 1596, adopted on August 10, 2011, authorizing the issuance of the PBA Government Facilities Revenue Bonds, Series R (the "<u>Series R Bonds</u>"), and (b) Resolution No. 1618, adopted on December 19, 2011, authorizing the issuance of the PBA Government Facilities Revenue Bonds, Series T (the "<u>PBA Series T Bonds</u>"). The PBA Funds deny the allegations contained in footnote 5. The PBA Funds admit that the Commonwealth has guaranteed the payment of rent under the PBA Leases with the Public Occupants other than municipalities and that the Commonwealth has guaranteed the payment of principal and interest on the PBA Bonds.

17. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and therefore deny those allegations.

18. The PBA Funds deny the allegations in Paragraph 18, which also contains legal conclusions to which no answer is required. However, the framing of Plaintiffs' legal

6

ny-1358260

conclusions in Paragraph 18 is wholly incorrect. In reality, the Puerto Rican legislature has made clear that "[t]he rent payable to the [PBA]" under the Leases challenged by plaintiffs "shall be reasonable and sufficient . . . to (i) pay the interest, principal, and amortization requirements of the bonds issued by the Authority for financing such a building, and to provide a reserve for such purposes, and (ii) to pay the operating and maintenance expenses of such a building, including a reasonable proportional amount to cover the administrative expenses of the Authority, the cost for replacing equipment, and other operating and maintenance expenses not occurring annually, and to provide a reserve for such purposes." 22 L.P.R.A. § 916; *see also* 1995 Bond Resolution § 701. All remaining factual allegations in Paragraph 18 are denied.

19. The PBA Funds deny the allegations in Paragraph 19, which also contains legal conclusions to which no answer is required. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 19, and therefore deny those allegations.

**The Leases**

20. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore deny those allegations.

21. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore deny those allegations. However, the PBA Funds admit that one of the lessees is the Municipal Revenue Collection Center. And, upon information and belief, some of the other key non-debtor lessees is the United States Government. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 21, and therefore deny those allegations. The PBA Funds also note that the Complaint does not purport to analyze all of the over 1,900 relevant Leases and does not specify the meaning of "some" in Paragraph 21.

22. The PBA Funds deny the allegations in Paragraph 22 that the Subleases exist for no other reason than to provide a source of payment for debt service on PBA Bonds that finance facilities and/or improvements to facilities already owned by the Commonwealth, except they admit that some of the Leases are structured as subleases. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 22, and therefore deny those allegations.

23. The PBA Funds lack knowledge or information sufficient to form a belief as to whether the leases used as an example of Subleases in Paragraph 23 are representative of the Leases at issue as a whole, and therefore deny that allegation, but admit the remainder of the statements in Paragraph 23.

**Debt Service Disguised as "Rent" Payments**

24. The PBA Funds deny the allegations in Paragraph 24. The PBA funds further contest that the rent payments are not in any way tied to the market rents a tenant might ordinarily pay for the use of similar properties under a true lease agreement. Again, this allegation ignores outright the will of Puerto Rico's legislature, which expressly grants the PBA the authority to consider "the interest, principal, and amortization requirements of the bonds" when setting rent. 22 L.P.R.A. § 916. Moreover, the PBA Funds deny that this is a dispositive issue and point out that the Complaint ignores the fact that the Leases are not disguised financing transactions because they leave no ownerships rights or interests to the tenants. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 24, and therefore deny those allegations.

25. The PBA Funds deny the allegations in Paragraph 25.

26. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore deny those allegations.

8

27. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore deny those allegations. And, again, the PBA Funds will note that the 1995 Bond Resolution explicitly states that bonds entirely paid down shall cease to give any rights to the bondholders. *See* 1995 Bond Resolution at 49. The Plaintiffs apparently believe that tenants, including those the FOMB purports to represent, should continue to pay rent for debt service after the landlord is no longer obligated to cover such debt service. Further, the Resolution provides for other mechanisms for redemption prior to maturity, which the Complaint ignores. *See id.* at 49-50. Specifically, the monthly payment under the Leases goes *down* once the landlord's debt costs are covered. This results in a substantial cost-savings to the Commonwealth and its departments, agencies, and instrumentalities. The UCC criticizes this feature of the Leases, suggesting rent should be higher for longer. In doing so, the UCC reveals that its pursuit of recovery is at odds both with the PBA and its workers, whose livelihood depends on rental payments, and the Commonwealth, which benefits from favorable terms in renting space.

28. The PBA Funds deny the allegations in Paragraph 28 and refer to the explanation contained in their response to Paragraph 27.

29. The PBA Funds deny the allegations in Paragraph 29, which also contains legal conclusions to which no answer is required. It is important to emphasize that Section 709 of the 1995 Bond Resolution mandates that the Leases be unconditional, 1995 Bond Resolution at 40, and, in any event, Section 1005 of the 1995 Bond Resolution provides that if any provision is found to be invalid, it does not affect any other provision of the Resolution or the bonds at issue. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 29, and therefore deny those allegations.

ny-1358260

30. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore deny those allegations.

31. The PBA Funds deny the allegations in Paragraph 31, which also contains legal conclusions to which no answer is required. The PBA Enabling Act requires that rent be set by taking into account amounts necessary "(i) pay the interest, principal, and amortization requirements of the bonds issued by the Authority for financing such a building, and to provide a reserve for such purposes, and (ii) to pay the operating and maintenance expenses of such a building, including a reasonable proportional amount to cover the administrative expenses of the Authority, the cost for replacing equipment, and other operating and maintenance expenses not occurring annually, and to provide a reserve for such purposes." 22 L.P.R.A. § 916. The PBA Funds deny that the provisions mentioned in Paragraph 31 show that PBA's operations are not those of a landlord but are those of an administrative agent facilitating the repayment of the PBA Bonds. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 31, and therefore deny those allegations.

32. The PBA Funds deny the allegations in Paragraph 32, including that the Leases contain other provisions "making clear that they are not arm's length true lease agreements but rather methods of financing entered into between related parties that are ultimately controlled by the same person," and note that Plaintiffs have not even identified those provisions. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 32, and therefore deny those allegations.

**Ownership and Occupation of "Leased" Properties**

33. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, and therefore deny those allegations.

ny-1358260

34. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and therefore deny those allegations.

35. The PBA Funds deny the allegations in Paragraph 35, including that the PBA's sole reason for entering into the Leases is to repay the PBA Bonds. As mentioned above, the PBA Enabling Statute explicitly requires rent under the Leases to cover management and operating expenses, as well as the amounts due under the PBA Bonds. 22 L.P.R.A. § 916; *see also* 1995 Bond Resolution at 37-38 (requiring the PBA to engage in construction, management, and maintenance of the relevant properties). The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 35, and therefore deny those allegations.

## FIRST CAUSE OF ACTION

**28 U.S.C. § 2201(a)**
**Bankruptcy Code Section 365(d)(3)**
**(Declaration That Leases Are Not Subject to Section 365(d)(3) Treatment)**

36. The PBA Funds' answers to Paragraphs 1-35 above are incorporated by reference as if fully set forth herein. The PBA Funds further deny any implications or allegations purportedly contained in the heading immediately preceding Paragraph 36 of the Complaint.

37. The PBA Funds deny the allegations in Paragraph 37.

38. The PBA Funds deny the allegations in Paragraph 38.

39. The PBA Funds deny the allegations in Paragraph 39.

40. The PBA Funds deny the allegations in Paragraph 40.

41. The PBA Funds deny the allegations in Paragraph 41.

42. The PBA Funds deny the allegations in Paragraph 42.

43. The PBA Funds deny the allegations in Paragraph 43.

44. The PBA Funds deny the allegations in Paragraph 44.

ny-1358260

## SECOND CAUSE OF ACTION

**28 U.S.C. § 2201(a)**
**Bankruptcy Code Sections 503(b) and 507(a)(2)**
**(Declaration That PBA Does Not Have Administrative Claim**
**Against Debtors Under Leases and That Any Such Claim is Disallowed)**

45. The PBA Funds' answers to Paragraphs 1-44 above are incorporated by reference as if fully set forth herein. The PBA Funds further deny any implications or allegations purportedly contained in the heading immediately preceding Paragraph 45 of the Complaint.

46. The PBA Funds deny the allegations in Paragraph 46.

47. The PBA Funds deny the allegations in Paragraph 47.

48. The PBA Funds deny the allegations in Paragraph 48.

## THIRD CAUSE OF ACTION

**28 U.S.C. § 2201(a)**
**Bankruptcy Code Sections 365(d)(3), 502, and 503(b)**
**(Declaration That Non-Debtor Leases Are Not Subject to Section 365(d)(3) Treatment, Do**
**Not Give Rise to Administrative Claim, and Any Such Claim is Disallowed)**

49. The PBA Funds' answers to Paragraphs 1-48 above are incorporated by reference as if fully set forth herein. The PBA Funds further deny any implications or allegations purportedly contained in the heading immediately preceding Paragraph 49 of the Complaint.

50. The PBA Funds deny the allegations in Paragraph 50.

51. The PBA Funds deny the allegations in Paragraph 51.

52. The PBA Funds lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and therefore deny those allegations.

53. The PBA Funds deny the allegations in Paragraph 53.

## PRAYER FOR RELIEF

WHEREFORE, the PBA Funds deny that Plaintiffs are entitled to any relief and respectfully requests that that the Court:

(a) enter judgment dismissing the Complaint with prejudice;

(b) grant the PBA Funds costs and expenses, including reasonable attorneys' fees incurred in this action; and

(c) grant the PBA Funds such additional relief as the Court deems just and proper.

## GENERAL DENIAL

Except as otherwise previously admitted in paragraphs 1 through 53, the PBA Funds deny each and every allegation contained in paragraphs 1 through 53 of the Complaint, including, without limitation, the headings and subheadings. The PBA Funds expressly reserve the right to amend and/or supplement their Answer.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Without assuming any burden of proof that they would not otherwise bear under applicable law, and without limitation as to any and all other affirmative and additional defenses that they have, including those that subsequently may arise in this action, the PBA Funds assert the following affirmative or additional defenses to Plaintiffs' claims:

## FIRST DEFENSE

The Complaint, and each and every claim and cause of action stated therein, fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel, waiver, acquiescence, unclean hands, and/or other equitable defenses.

13

## THIRD DEFENSE

Plaintiffs have an adequate remedy at law, and no basis exists for any equitable relief.

## FOURTH DEFENSE

The Official Committee of Unsecured Creditors of all Debtors other than COFINA does not have standing to bring this action.

## FIFTH DEFENSE

The doctrine of laches bars claims by the Commonwealth because the Commonwealth unreasonably delayed in claiming that the Leases were not legitimate.

## SIXTH DEFENSE

Plaintiffs' claims are also barred because they are contrary to public policy. Any alternative characterization of the Leases would undermine investor confidence, unnecessarily call into question the integrity of the rent-backed securitization model, and seriously jeopardize the ability of the Commonwealth to raise needed capital quickly and inexpensively.

## SEVENTH DEFENSE

Plaintiffs' claims should be barred by the doctrine of unjust enrichment. Plaintiffs benefited from the infrastructure built via the financing obtained through the Leases and Bonds. The Commonwealth continues to benefit through use of the rented premises. Plaintiffs would be unjustly enriched if they were permitted to confiscate the pledged rental payments from PBA and the PBA Funds after having enjoyed those benefits.

## EIGHTH DEFENSE

This Court does not have subject matter jurisdiction over this matter. The PBA Funds assert that this Title III Court does not have jurisdiction to change the characterization of Leases

between the PBA and entities other than the Title III Debtors.

## NINTH DEFENSE

The PBA Funds currently have insufficient knowledge or information upon which to form a belief as to whether they may have additional and yet unstated affirmative defenses available. The PBA Funds, therefore, reserve the right to assert all other defenses that may be pertinent to the Complaint and assert counterclaims and other claims once the precise nature of the Plaintiffs' claims are ascertained through discovery and investigation.

## COUNTERCLAIM

54. Defendant-Intervenors / Counterclaim Plaintiffs the PBA Funds bring this counterclaim against Plaintiffs / Counterclaim Defendants the Oversight Board and the UCC,[5] which arises out of the same series of transactions and occurrences set forth in the Complaint.

## PARTIES

55. Defendant-Intervenors / Counterclaim Plaintiffs the PBA Funds are holders of PBA Bonds.

56. Plaintiff / Counterclaim Defendant the Oversight Board was established by PROMESA to assist Puerto Rico in achieving "fiscal responsibility and access to the capital markets." PROMESA § 101(a).

57. Plaintiff / Counterclaim Defendant the UCC serves as the official representative of unsecured creditors of the Commonwealth and related debtors (other than COFINA). It is not a tenant, landlord or third-party beneficiary under any of the leases at issue.

---

[5] Although the PBA Funds do not believe the UCC has standing, they have been named in the Counterclaim unless and until the standing issue is resolved.

## JURISDICTION

58. The Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. § 2201 and 48 U.S.C. § 2166. Venue is proper in this district pursuant to 48 U.S.C. § 2167. This Counterclaim complies with the Court's March 12, 2019 Order, requiring counterclaims be "directly related to the issues raised in the Complaint or PBA's Answer." Dkt. No. 54.

## COUNT I
### (Request for Declaratory Judgment as to PBA Leases)

59. The PBA Funds incorporate herein by reference paragraphs 54 through 58 of its Counterclaim as if fully rewritten herein.

60. By their Complaint, the Oversight Board and UCC allege, inter alia: (1) that the PBA leases are disguised financings; and (2) that the PBA has no right under PROMESA or the Bankruptcy Code to receive post-petition rent payments. An actual controversy exists between the PBA Funds, the Oversight Board, and UCC as to whether the PBA Leases are true leases, entitling the PBA to administrative expense treatment under the Bankruptcy Code and PROMESA.

61. The terms of the Leases challenged by the Plaintiffs in this action are legislatively mandated through the PBA Enabling Act, as passed by the Legislative Assembly.

62. The PBA Leases do not contain a crucial term that is the hallmark of financing: the ability of the tenant to convert monthly payments into equity or an ownership interest in the leased premises.

63. The PBA Leases are non-severable and valid net leases, requiring the tenants to cover a landlord's costs (debt and operating).

64. The PBA has been operating since 1958, and is fiscally and operationally independent from the Commonwealth. It is not a "sham" operation whose purpose was to facilitate leases disguised as financings.

65. Accordingly, and through this counterclaim, the PBA Funds seek and are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201(a) that the PBA Leases are valid leases under Commonwealth law, and are unexpired leases of nonresidential real property for the purposes of section 365(d)(3) of the Bankruptcy Code.

## COUNT II

### (Request for Declaratory Judgment That the PBA Leases Are Subject to Section 365(d)(3) Treatment)

66. The PBA Funds incorporate herein by reference paragraphs 54 through 65 as if fully rewritten herein.

67. The PBA Leases are legitimate under both Commonwealth law and for the purposes of Bankruptcy Code section 365(d)(3), as made applicable to these Title III Cases by PROMESA section 301(a).

68. As such, the Debtors "shall timely perform all obligations. . . first arising from or after the order for relief under any unexpired lease nonresidential real property, until such lease is assumed or rejected . . . ." 11 U.S.C. § 365(d)(3).

69. Because the Debtors have yet to assume or reject any of the PBA Leases, the Debtors are required to timely perform their obligations under the PBA Leases, which includes making monthly rent payments for the postpetition use and occupancy of PBA property. The Debtors' duty to make these rent payments is unconditional.

70. Accordingly, and through this counterclaim, the PBA Funds seek and are entitled to a judicial declaration that the PBA Leases are "true leases" subject to the requirements of

Bankruptcy Code section 365(d)(3), and therefore the PBA is entitled to an administrative expense claim for all postpetition amounts that remain due and owing by the Debtors under the PBA Leases, as well as any amounts that may accrue moving forward until such Leases are assumed or rejected by the Debtors.

## COUNT III

**(Request for Declaratory Judgment that the PBA has an Administrative Expense Claim Against the Debtors Under the Leases and Any Such Claim is Allowed)**

71. The PBA Funds incorporate herein by reference paragraphs 54 through 70 as if fully rewritten herein.

72. Since the commencement of the Title III Cases, the Debtors have continued to use and enjoy leased PBA property. However, the Debtors have failed to meet their rent payment obligations that are due and owing under the PBA Leases. These delinquent and accruing rent payments constitute the actual and necessary costs or expenses of preserving the Debtors' estates.

73. The PBA is entitled to an administrative expense claim for the "actual, necessary costs and expense of preserving the estate." 11 U.S.C. § 503(b)(1) (as made applicable to the Title III Cases by PROMESA section 301(a)). Bankruptcy Code section 507(a)(2), made applicable to these Title III Cases by PROMESA section 301(a), provides for priority of payment for allowed, administrative expense claims arising under section 503(b)(1). *See* 11 U.S.C. § 507(a)(2).

74. Accordingly, and through this counterclaim, the PBA Funds seek and are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201(a) that the PBA is entitled to a priority administrative expense claim under the Leases pursuant to sections 503(b)(1) and 507(a)(2) of

18

the Bankruptcy Code, and that any such claim filed or asserted against the Debtors shall be allowed in full.

## PRAYER FOR RELIEF

WHEREFORE, Defendant-Intervenors / Counterclaim Plaintiffs the PBA Funds pray for relief as follows:

1. Entry of judgment in favor of the PBA Funds declaring that the PBA Leases are non-severable and valid leases under Commonwealth law and are unexpired leases of nonresidential real property for the purposes of Bankruptcy Code section 365(d)(3).

2. Entry of judgment in favor of the PBA Funds declaring that, pursuant to Bankruptcy Code section 365(d)(3), the PBA Leases give rise to administrative expense claims for all postpetition amounts that remain due and owing by the Debtors under the PBA Leases, as well as any amounts that may accrue moving forward until such Leases are assumed or rejected by the Debtors.

3. Entry of judgment in favor of the PBA Funds declaring that the PBA is entitled to a priority administrative expense claim under the Leases pursuant to Bankruptcy Code sections 503(b)(1) and 507(a)(2), and that any such claim filed or asserted against the Debtors shall be allowed in full.

4. Such additional legal and equitable relief as this Court may be deem just and reasonable.

ny-1358260

Dated: March 19, 2019

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: */s/ Kendra Loomis*
Kendra Loomis
USDC PR No. 227408
Telephone: (787) 370-0255
loomislegal@gmail.com

**G. CARLO-ALTIERI LAW OFFICES, LLC**
254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

-and-

By: */s/ Grant J. Esposito*
James M. Peck (admitted *pro hac vice*)
Gary S. Lee (admitted *pro hac vice*)
Grant J. Esposito (admitted *pro hac vice*)
David J. Fioccola (admitted *pro hac vice*)
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the PBA Funds*

20

ny-1358260